97-CV-00255-RPLY

Judge Mary Alice Theiler

FILED ____ ENTERED
LODGED ____ RECEIVED

OCT 2 3 2003    KN

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA,           )   No. C97-0255W
                                    )
            Plaintiff,              )   RECEIVER'S REPLY TO OBJECTIONS
                                    )   OF GERTIE KWANT
    v.                              )
                                    )
PHILIP E. HARMON, et al.            )
                                    )
            Defendants.             )
                                    )

## I. OVERVIEW

One objection was submitted to the Receiver's proposed distribution of CIL assets. Gertie Kwant and her attorneys contend that the entire $130,000 that the Receiver seeks to distribute pro rata among all unsecured creditors should be paid solely to her. She and her husband were certainly treated unfairly by Harmon, but that is also true in regard to every other one of Harmon's victims. No valid legal theory was submitted to support her claim that she should be paid all of the funds that the Receiver proposes to distribute among all unsecured creditors, including Mrs. Kwant. Her objection, which is not supported by any case law or other authority, should be rejected. The funds held by the Receiver should be distributed in accordance with the plan proposed by the Receiver.

## II. ARGUMENT

A.  <u>Kwant is not entitled to any payments based on her claims of security interests arising out of judgments against FIC and CIL</u>.

Kwant's argument that she obtained security interests from her judgments against FIC

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 1
N:\CLIENTS\23504\2\KwantResponse.doc

ORIGINAL

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and CIL overlooks a critical fact. A security interest can only be held against particular assets. The security interest must attach to an asset of the Debtor, and even then, the security interest is worthless unless the debtor has some equity in the asset. When a judgment is entered, the creditor gets a lien against the Debtor's real property located in the county where judgment is entered. RCW 4.56.190. The lien does not commence until the judgment is entered. RCW 4.56.200. By the time that the Kwant judgment against FIC was entered, all but one of the FIC assets had been transferred to CIL. Further, FIC had no equity in the one property it retained. In these circumstances, Kwant concedes that she is not entitled to recover any amount.

Kwant does no better under her judgment against CIL. By the time that the CIL judgment was entered, all of the CIL assets were in the Receivership. Again, Kwant did not obtain a security interest in any parcels of CIL property. Once a federal receivership has been ordered, the federal court has exclusive jurisdiction over property in the receivership. In discussing 28 U.S.C. §959, which establishes the authority of federally appointed receivers, Wright, Miller & Marcus in their Federal Practice and Procedure: Civil 2d, §2984, review the exclusive power that the receivership court holds over receivership property:

> The second sentence of Section 959a, which subjects suits against receivers to the general equity power of the appointing court, simply is intended to preserve to that court full and exclusive power over the receivership property and consequently over the satisfaction and enforcement of any rights which might be determined regarding that property in other courts. The same rationale suggests that Section 959(a) should not be construed to permit suits that aim to establish adverse rights in the receivership property or that otherwise interfere with the receiver's control and management of the estate. A claimant's proper remedy in these cases is to intervene in the receivership proceeding and submit his claim to the receivership court. (Emphasis added.)

The power of a federal receiver is further set forth in FRCP 66 and LR 66. FRCP 66 specifically authorizes district courts to promulgate rules for the administration of receivership estates. In LR 66(d), the Western District of Washington has provided that in all aspects not specifically covered by the receivership rules, a receivership shall be administered in accordance with the practices followed in a bankruptcy case.

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 2
N:\CLIENTS\23504\2\KwantResponse.doc

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Following in this Receivership the procedures that are followed in bankruptcy supports the Receiver's plan. When a bankruptcy is filed, actions by individual creditors that give themselves an advantage over other creditors are not permitted. Instead, as of the filing date, the assets of the debtor become the assets of the bankruptcy estate, and are only available for distribution to creditors based on their status as of the date of filing. 11 U.S.C. §541 (a)(1) (the commencement of a bankruptcy case creates an estate that includes "all legal or equitable interest of the debtor in property as of the commencement of the case."); 11 U.S.C. §726(b) (in a chapter 7 case, payments on claims within each class shall be made on a pro rata basis); 11 U.S.C. §1123(a)(4) (in a chapter 11 case, all creditors within a class must be given the same treatment). Applying these same principles to this federal receivership, once CIL was brought into the receivership, CIL assets that were not encumbered at that time became part of the receivership and remained <u>un</u>encumbered for the benefit of all unsecured creditors.

The law of the case doctrine does not assist Kwant. Kwant cites no authority to support her invocation of this doctrine. The Ninth Circuit has described the law of the case doctrine as follows:

> Under the doctrine, ... a court is generally precluded from reconsidering an issue previously decided by <u>the same court, or a higher court in the identical case</u>. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implications in [the] previous disposition."... Application of the doctrine is discretionary. ...

United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000)(emphasis added).

Obviously, this United States District Court is not the same court as the Snohomish County Superior Court, nor is it an appellate court in the identical case. Therefore, since the present case is a different case pending in a different court, the law of the case doctrine clearly does not apply. Further, this conclusion is proper without reaching the question of whether the issue that is at issue now in this case is the same issue that was decided in state court, although particular issues addressed in Snohomish County are reviewed below in the discussion of res judicata. Not surprisingly, Kwant cites no case suggesting that the law of the case applies here.

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 3
N:\CLIENTS\23504\2\KWANTRESPONSE.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE (206) 623-1900
FACSIMILE: (206) 623-3384

In short, the doctrine does not apply to this case.

The doctrine of res judicata also fails to advance the Kwant position. The elements of res judicata have been stated by the Ninth Circuit as follows:

> The doctrine of res judicata bars "all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties…on the same cause of action, if the prior suit concluded in a final judgment on the merits."…
>
> …In determining whether successive claims constitute the same cause of action, we consider
>
> > (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction nucleus of facts.

International Union v. Karr, 944 F.2d 1426, 1429 (9th Cir. 1993).

One problem in Kwant's position is that, as explained above, the state court did not have jurisdiction of this matter. An order from a court lacking jurisdiction of the matter before it cannot establish res judicata. Pension Trust Fund for Operating Engineers v. Triple A Machine Shop, Inc., 942 F.2d 1457, 1460 (9th Cir. 1991)("state court judgment cannot act to bar claims over which federal courts have exclusive jurisdiction.")

Further, the facts and issues in the Receivership and the state court action are different. Kwant's state court claim addressed her claim against Harmon, while the Receivership action, among other things, addresses the facts and legal issues pertaining to the priorities of the claims between the various parties and the rights of the creditors at the time the receivership was filed. These are significantly different causes of action.

Another critical problem with Kwant's position is this. Even if the order and judgment that Kwant obtained in state court were deemed to be controlling in this federal receivership, she would still not be entitled to enforce a security interest against the CIL assets. The Snohomish County Superior Court specifically declined to enter the order proposed by Kwant. See Fuhriman Decl. Ex. 19, 20. Several paragraphs proposed by Kwant were crossed out before the

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 4
N:\CLIENTS\23504\2\KWANTRESPONSE.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

judge would sign the order. All of the changes required by the court are consistent with, and support, the position asserted by the Receiver.

First, the case in Snohomish County involved other parties and other claims that were not resolved in the order and summary judgment against CIL. Other defendants besides CIL were sued by Kwant. In addition, other claims, including Kwant's claim for emotional distress and all of her claims against the other remaining parties, are still pending. Therefore, under Washington CR 54(b), a summary judgment would only be a final judgment if it included specific findings that there was no just reason for delay and upon an express direction for the entry of judgment. Kwant proposed both of the findings in paragraphs 5 and 7 of her proposed judgment. Id. Ex. 20. They were rejected by the court, and these paragraphs of the proposed order were crossed out. Without these findings, the order was not a final order, which is a prerequisite to applying res judicata. Karr at 1429.

Kwant also requested authority to immediately execute upon the judgment. Id. Ex. 20, ¶6. In deference to the Receivership, the court required that paragraph 6 of the proposed order be crossed out as well. Kwant also requested that the judgment be entered nunc pro tunc. Id. Ex. 19, last paragraph on page 2. The date that Kwant requested as the effective date for her judgment was a date that was prior to the establishment of the Receivership. Id. The reason to seek an earlier date for the judgment was that with the receivership in place, it was too late to obtain a judgment that would attach to the CIL property, because that property was already under the jurisdiction of this Court. This argument by Kwant was also rejected by the state court, and the requested language was again crossed out. Id.

The only relief that was granted to Kwant was the liquidation of the amount of her claim. Id. Ex. 20, ¶3. The amount of her claim, as of the date of the judgment, is not in dispute. Thus, to the extent that Kwant attempted to include in the judgment a right to encumber CIL property with a final judgment lien and to proceed with collection of the judgment against that CIL's assets, Kwant's position was rejected. Instead, these issues were decided against Kwant when

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 5
N:\CLIENTS\23504\2\KwantResponse.doc

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the state court refused to include the provisions that would make the summary judgment a final judgment, refused to allow Kwant to enforce the judgment, and refused to enter the judgment nunc pro tunc.

There is no basis in the arguments submitted by Kwant, all of which are submitted without any supporting authority, to reject the standard and fundamental rules governing federal receiverships. Through the appointment of a receiver for CIL, this Court took exclusive jurisdiction over the property of CIL. Under Local Rule 66(d), the administration of the receivership should be in accordance with bankruptcy procedure. Under these rules, all property of CIL must be administered for the benefit of <u>all</u> creditors. Only those encumbrances that were perfected as of the commencement of the receivership can be recognized, and individual creditors, such as Kwant, are not allowed to gain an unfair advantage <u>over other creditors</u> by proceeding against CIL assets after the commencement of the receivership.

B.   <u>The commission of fraud by Harmon and his agents does not change an unsecured claim into a secured one</u>.

There is no question that Harmon defrauded his victims, including the Kwants. In fact, many victims were defrauded in the same way that the Kwants were defrauded, in that Harmon represented to many people that they were secured when they were not. However, being defrauded has nothing to do with whether a creditor has a security interest.

A security interest gives a creditor one set of rights, in particular the right to be paid his or her debt from the proceeds from a particular asset in which a security interest is obtained. A fraud claim gives rise to a different set of rights, including, of particular relevance here, the right to obtain a nondischargeable judgment in bankruptcy (which Kwant has obtained). However, there is nothing -- in receivership law, bankruptcy law, or any other area of law -- that gives a creditor a security interest on the grounds that the debtor committed fraud.

Indeed, a primary purpose underlying the law governing liens and other security interests is to require a public record of the claimed interests that third parties can inspect and rely on. It

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 6
N:\CLIENTS\23504\2\KWANTRESPONSE.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

is unfortunate that the Kwants did not confirm that Harmon filed the deed of trust. But the consequence of the deed of trust not being filed is that Kwant did not obtain a security interest, regardless of how offensive Harmon's conduct was. Again, Kwant submits no authority to the contrary.

Further, nothing is added by calling this a fraud on the court. This is apparently an effort to distinguish the other victims who were, supposedly, defrauded in some other way. However, no matter how the fraud occurs, it does not change an unsecured claim into a secured one. The only apparent consequence of claiming that Harmon's lawyer lied is that Kwant may have a claim against the lawyer for damages proximately caused by his fraud. However, that fraud cannot form a proper basis to give her a security interest, to the determent of all other creditors of CIL.

It is important to note that although Kwant was certainly damaged by Harmon in a despicable way, she seeks to rely on principles of equity to gain an advantage <u>over other creditors</u>. Instead, as discussed above, in a receivership or a bankruptcy, the equity that should drive a court's decision is the fair and equal treatment of all creditors. If this case involved claims by Kwant against those who wronged her, equitable principles would, of course, weigh in her favor. However, because she is attempting to gain an advantage over all the other injured parties, principles of equity demand a ruling in favor of the collective body of creditors.

C.  <u>Kwant's argument on interest does not justify any relief</u>.

Kwant states that her claim should include interest through the present. Ideally, everyone's claim would include interest through the present, and everyone would be paid in full. Instead, the funds remaining after the payment of all enforceable security interests are going to be divided pro-rata among the creditors. The only issue regarding interest is to select a fair date through which to calculate interest.

The Receiver is prepared to use any date the Court requires, but the only effect of using the present date, or any other date the court sets, will be to increase the fees and costs incurred in

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 7
N:\CLIENTS\23504\2\KWANTRESPONSE.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the Receivership and to reduce the return to the creditors. The Court has discretion to avoid this approach, and to uphold the use of the same date, December 31, 1996, for all parties.

This approach is also consistent with the requirements in bankruptcy, which are applicable here. LR 66(d). In a bankruptcy case, claims are not entitled to interest after the date of commencement of the case unless available funds exceed the amount needed to pay the principal amount of all claims. 11 U.S.C. §726(a)(5). The result is that whenever there is a pro rata distribution to unsecured creditors, all creditors are treated equally when funds are distributed. 11 U.S.C. §726(b) and 11 U.S.C.§1123(a)(4). It is never permitted that one unsecured creditor gets interest through one date and another gets interest through another date. Therefore, to the extent that Kwant is arguing that interest on her claim should be calculated through the present, with interest on other claims calculated through 1996, there is no possible merit to the position.

Indeed, Kwant does not explicitly pursue this position, since she recognizes that adding interest to everyone's claim would be an "academic" exercise that would not actually change the distribution. The only reason that Kwant appears to have included this argument is to suggest that time can be saved by giving her all the money, as a secured creditor, so that the recalculation of everyone's claim is unnecessary. This is not a legitimate argument. Recalculating claims will not become unnecessary by giving Kwant a security interest to which she is not entitled. It is already unnecessary. One major reason that courts administering receiverships are given substantial discretion to carry out the administration is to allow courts to make reasonable, common sense decisions that reduce costs while still providing a fair distribution of proceeds. That goal is accomplished in this case by using the same cutoff date for the calculation of interest for all unsecured creditors and by using the date that causes the least cost to the Receivership. Therefore, because the date of December 31, 1996 treats all unsecured creditors the same for the calculation of their pro rata share, minimizes costs to the Receivership, and thereby increases the return to creditors, the use of this date should be upheld.

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 8
N:\CLIENTS\23504\2\KwantResponse.doc

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

D.    <u>Kwant's claim must be reduced by amounts received</u>.

A receivership or bankruptcy claim is properly submitted for the net amount of the debt. In re Allen, 240 B.R. 231 (Bankr. W.D. Va. 1999). Kwant asserts that she had another claim to which the recovery should be applied. If so, that calculation could have been presented. However, a review of the allocation of funds among the five parties that Kwant's lawyer represented shows that the funds were allocated among the parties based on the amount of their claims, including recoveries from all sources. Thus, Kwant was paid $102,270.32 by Harmon and his entities and agents based on her total claims against Harmon and his entities and his agents. If Kwant wanted to allocate some part of her recovery to a note other than the CIL notes, that was presumably a possibility, but no such evidence was presented in support of her claim, or even in objection to the Receiver's plan. Since the note referenced in the response is small, presumably the allocation would also be small. It seems, therefore, that a tactical decision was made to avoid calculating how much of the $102,270.32 should be allocated to the other note because the amount would be small.

The alternate tactic is to argue that some part of the offset may not be correct, and therefore no part of the offset should be recognized, even though most of the amount paid to Kwant was based on her FIC/CIL claims. The problem with this tactic is that Kwant has the burden of presenting the correct amount of her claim. Bankruptcy Rule 3001(f). The argument that perhaps the claim should be a little larger does not meet this burden. Further, at this point, it would be unduly costly to recalculate the pro rata shares after subtracting some small and currently unknown amount from the offset. Assuming some adjustment were eventually proven, the effect on the distribution would be trivial, and the creditors should not have to bear the cost of the Receiver recalculating the amounts to be distributed.

The fact that Kwant may have expended legal fees in pursuing Harmon does not provide an alternative basis for her position. Attorneys' fees can be recovered only in specifically authorized circumstances. One such basis is the generation of a common fund for a group of

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 9
N:\CLIENTS\23504\2\KwantResponse.doc

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

claimants, but when Kwant proceeded against Harmon, she kept the recovery for herself. That is fine, but she cannot point to her expenditures to avoid the standard rules governing distributions to creditors in a receivership or bankruptcy.

E.  The distribution of funds should not be delayed so that Kwant can pursue a claim for emotional distress.

Kwant's assertion is that because her claim for emotional distress is pending in state court, the Receiver's plan is premature. This is not correct for several reasons.

One deficiency is that no evidence was presented by Kwant in support of her claim in the Receivership for emotional distress. It was her burden to present this evidence. Further, there are even more fundamental problems with the reasoning behind Kwant's argument.

There is no doubt that Kwant suffered greatly because of Harmon's misconduct. However, it is equally certain that all of Harmon's other victims also suffered. All of his victims suffered, monetarily and emotionally. If damages for emotional distress are to be included in the claim of any creditor, then such damages should be included in all claims. And if Harmon could pay, then emotional distress should definitely be included in each claim. However, there are not sufficient funds in the Receivership to pay even the monetary damages. Therefore, at most, the impact of precisely valuing the distress suffered by each creditor would be to slightly adjust the amounts of the claims on which the creditors' pro rata shares are based.

It is not at all certain that even a precise valuation of emotional distress would increase the fairness of the distribution. Essentially all of the parties suffered the same type of loss, which was the loss of savings to a person that they thought they could trust. Differences in emotional distress would result from individual differences in the ability of the victims to adjust to the mistreatment. If Harmon paid for the varying amounts of distress, that would be fine. But here, the emotional distress suffered by some victims would be paid other victims. However, in this case, it is not necessary to reach this potentially difficult issue. Here, the cost of evaluating emotional distress claims would be exorbitant in relation to the impact on the distribution.

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 10
N:\CLIENTS\23504\2\KwantResponse.doc

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Indeed, reviewing the claims in this case could easily exhaust the remaining funds. In these circumstances, the proper exercise of the court's discretion is to exclude emotional distress from all claims. This will leave a fair distribution of the funds, and will increase the total return to unsecured creditors as a group by limiting the costs incurred by the Receiver.

Further, in the opinion of the Receiver, if the matter were continued to allow Kwant to liquidate her damages in state court, then the ratio of emotional distress damages to out-of-pocket damages that was established in the Kwant case should be used as a reasonable way to estimate the emotional distress damages for all creditors. All creditors would have a corresponding increase in their claims, and the percentage to be paid to each creditor would thereby be the same. This would minimize the additional administrative costs incurred, and it would not distort the distribution by allowing some creditors, but not others, to recover for emotional distress. However, there would be no point in incurring any administrative expenses if the effect of the process was that each unsecured creditor would be paid the same percentage of the net proceeds available for distribution to the unsecureds.

Two points seem clear. First, Kwant should not be paid for emotional distress unless everyone is. Second, the cost of actually calculating the emotional distress incurred by each creditor is prohibitive in relation to the amount at issue. Therefore, it is equally clear that Kwant's argument that the plan is premature should be rejected. As with the argument on interest, it seems that the primary reason for including this argument is to allow the suggestion to be made that the whole issue can be avoided by upholding Kwant's claim that she should be paid the entire amount based on her claim of a security interest. However, avoiding this issue does not justify giving all of the funds to one creditor, when the fair and proper result is to distribute the final balance of approximately $130,000 among the unsecured claimants pro rata as set forth in the Receiver's plan.

### III. CONCLUSION

Kwant's assertion that she has a security interest in all assets, or any assets, of CIL is

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 11
\\KRFILE\DATA\CLIENTS\23504\2\KwantResponse.DOC

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

wrong. None of the legal theories that she mentions support her position. Indeed, she does not cite any authority to support any argument that she makes. In addition to the legal deficiencies in her theories, the primary event she relies on, the entry of judgment in Snohomish County in her favor against CIL, contradicts her position on the matters at issue here.

Further, the equitable arguments that Kwant makes do not justify the grant of relief to her at the expense of other creditors who were also cheated by Harmon. All of the victims of Harmon's fraud have equitable arguments against him, but none of them have equitable arguments against each other.

Kwant's request that she alone receive all of the funds that should be divided up among all unsecured creditors should be denied.

DATED this 21 day of October, 2003.

KELLER ROHRBACK L.L.P.

By: _____
John Mellen, WSBA #12373
Frederick Schoepflin, WSBA #19060
Attorneys for Receiver

RECEIVER'S REPLY TO OBJECTIONS OF
GERTIE KWANT (C97-0255W) Page 12
\\KRFILE\DATA\CLIENTS\23504\2\KWANTRESPONSE.DOC

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384